# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　Plaintiff,<br><br>vs.<br><br>LORIN A. AHLERS,<br><br>　　　　　Defendant. | No. CR00-1015<br><br>**REPORT AND RECOMMENDATION** |

This matter comes before the court pursuant to movant Lorin A. Ahlers's motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255 (docket number 317) and his motion to reconsider sentencing (docket number 307). Briefs on the merits of this matter have been submitted. This matter was referred to the undersigned United States Magistrate Judge for issuance of a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). The undersigned recommends that the application be dismissed.

## I. PROCEDURAL HISTORY

Movant Lorin A. Ahlers and two other individuals, Robert H. "Butch" Frank and Kimberly K. Welch, were charged with federal crimes in an indictment returned October 30, 2000, in the Northern District of Iowa. The indictment charged all three defendants "with devising and participating in a scheme to defraud" Iowa District Court Judge Thomas Nelson, the Continental Insurance Company, and the United States in connection with a criminal judgment entered against Mr. Frank. Mr. Frank was convicted in the District Court for the Northern District of Iowa in February 1988 of the May 1985 arson of Judge Nelson's Dubuque, Iowa, home after Judge Nelson had entered a default judgment against Mr. Frank in a March 1985 divorce proceeding. Mr. Frank was sentenced to 30 years of incarceration and ordered to make restitution in the amount of

1

$250 to Judge Nelson, $121,600.01 to the Continental Insurance Company, and to pay a $300 special assessment to the United States. Upon his release from prison on parole in 1998, Mr. Frank was required to make payments on the criminal judgment and provide the United States Probation Office with monthly financial statements.

Mr. Ahlers was named in 11 counts of the October 30, 2000 indictment. Mr. Frank was named in all 50 counts. Count 16 charged Mr. Ahlers with mail fraud in his attempt to conceal his true assets, income, and earning potential to avoid repayment or collection of the 1988 criminal judgment in violation of 18 U.S.C. §§ 2 and 1341. Counts 23 through 27 charged Mr. Ahlers with wire fraud in connection with the scheme outlined in Counts 1 through 22 in violation of 18 U.S.C. §§ 2 and 1343. Count 28 charged Mr. Ahlers with conspiracy to defraud the United States in violation of 18 U.S.C. § 371. Count 45 charged Mr. Ahlers with obstruction of justice and aiding and abetting the obstruction of justice in order to facilitate the above outlined scheme in violation of 18 U.S.C. §§ 2 and 1503. Count 46 charged Mr. Ahlers with money laundering in order to facilitate the above outlined scheme in connection with a transaction involving a 1954 Chevrolet Corvette in violation of 18 U.S.C. §§ 2 and 1956(a)(1)(B)(I). Count 49 charged Mr. Ahlers with conspiracy to commit money laundering in order to facilitate the above outlined scheme in violation of 18 U.S.C. §§ 1956(a)(1)(B)(I), 1956(h), and 1957.

Mr. Ahlers pleaded not guilty to the counts with which he was charged on November 6, 2000. Mr. Ahlers was convicted of Counts 23–27, 28, 45, 46, and 49 of the March 21, 2001 indictment following a four day jury trial on November 2, 2002 before Judge Robert T. Dawson, United States District Court Judge for the Western District of Arkansas, sitting by designation. He was acquitted of Count 16.

Mr. Ahlers was sentenced on January 30, 2003, to 60 months of incarceration on each of Counts 23 through 28 and 92 months of incarceration on each of Counts 45, 46, and 49. The district court ordered all terms of imprisonment to run concurrently. Mr. Ahlers was also charged a special assessment of $900 and fined $4000. Upon release,

Mr. Ahlers is subject to 3 years of supervised release. The district court dismissed Count 50 of the indictment.

On February 11, 2003, Mr. Ahlers gave timely notice of his intent to appeal his conviction to the United States Court of Appeals for the Eighth Circuit. In his brief to the circuit court, Mr. Ahlers raised numerous arguments, including that the district court erred: (1) in allowing into evidence letters Mr. Frank wrote while in prison that were irrelevant to the issues in the case; (2) in denying Mr. Ahlers's pretrial motion to sever; (3) in denying Mr. Ahlers's motion for judgment of acquittal and a new trial; (4) in determining Mr. Ahlers's base offense level under the U.S. Sentencing Guidelines; and (5) in failing to grant Mr. Ahlers's motion for a downward departure in his sentence. The Eighth Circuit affirmed Mr. Ahlers's convictions in all respects. United States v. Frank, 354 F.3d 910, 929 (8th Cir. 2004).

The instant motion was filed by Mr. Ahlers, pro se, on December 21, 2004. In his 28 U.S.C. § 2255 motion, Mr. Ahlers raises numerous arguments challenging his conviction and sentence. Specifically, Mr. Ahlers asserts: (1) ineffective assistance of counsel; (2) denial of his Sixth Amendment right to counsel on appeal; (3) the district court lacked subject matter jurisdiction; (4) the sentence imposed by the district court violated the ex post facto clause of the United States Constitution; and (5) the sentence imposed by the district court violated the 5th and 6th Amendments to the United States Constitution. This motion was referred to the undersigned United States Magistrate Judge on March 18, 2005, for issuance of a Report and Recommendation. The government resisted Mr. Ahlers's section 2255 motion on April 8, 2005.

Mr. Ahlers filed an addendum to his section 2255 motion on January 18, 2005, that restated his claim that the district court lacked subject matter jurisdiction. He filed no motion to amend his petition. Mr. Ahlers also filed a brief in support of his section 2255 motion on April 21, 2005. Again, Mr. Ahlers did not move to amend. In the April 21 addendum, Mr. Ahlers reiterates the claims he alleged in his original section 2255 petition,

but with additional legal support. Because no new claims are raised in either addendum, Mr. Ahlers's claims will be adequately addressed by this court's consideration of the claims Mr. Ahlers set forth in his original section 2255 motion.

## II. CONCLUSIONS OF LAW

### A. Standard Under 28 U.S.C. § 2255

Title 28 U.S.C. § 2255 states in pertinent part:

> A prisoner under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

28 U.S.C. § 2255. Section 2255 is the statutory analogue of habeas corpus for persons in federal custody. Poor Thunder v. United States, 810 F.2d 817, 821 (8th Cir. 1987). "Like habeas itself, Section 2255 is not the equivalent of a direct appeal. There are many claims of error sufficiently grave and prejudicial to cause a reversal of conviction on direct appeal, but yet not fundamental enough to support a collateral attack" under section 2255. Id. at 821. Consequently, relief under section 2255 is reserved solely for "transgressions of constitutional rights and for a narrow range of injuries that could not have been raised on direct appeal and, if [left] uncorrected, would result in a complete miscarriage of justice." United States v. Apfel, 97 F.3d 1074, 1076 (8th Cir. 1996) (citing Poor Thunder, 810 F.2d at 821).

Ordinarily, the failure of a section 2255 movant to raise an issue on direct appeal acts to procedurally bar him or her from raising that issue for the first time in a motion pursuant to section 2255.[1] Matthews v. United States, 114 F.3d 112, 113 (8th Cir. 1997).

---

[1] The rule of procedural default applies with equal force to an adjudication of guilt
(continued…)

4

More specifically, as a result of a section 2255 movant's failure to raise an issue on appeal, the circuit court "cannot review his claims on their merits unless [the movant] is able to demonstrate either [1] cause for his default and actual prejudice, or [2] that the failure to consider his claims would result in a fundamental miscarriage of justice." McCall v. Benson, 114 F.3d 754, 758 (8th Cir. 1997) (citing Cole v. Thompson, 501 U.S. 722, 750 (1991)). The requirement of cause and prejudice means that a section 2255 movant "may not raise constitutional issues for the first time on collateral review without establishing both cause for the procedural default and actual prejudice resulting from the error." Apfel, 97 F.3d at 1076 (citing United States v. Frady, 456 U.S. 152, 167–68 (1982)). The "fundamental miscarriage of justice" exception to procedural default is "only available to a [movant] who demonstrates 'that a constitutional violation has probably resulted in the conviction of one who is actually innocent.'" McCall, 114 F.3d at 758. The rule of procedural default recognizes that the significant interest of finality in criminal cases retains strength only if the direct appeal remains the exclusive route for complaining of errors that demonstrate neither "a fundamental defect which inherently results in a complete miscarriage of justice, nor an omission inconsistent with the rudimentary demands of fair procedure." Id. at 821–22 (citing Johnson v. United States, 805 F.2d 1284, 1287 (7th Cir. 1986) (quoting Hill v. United States, 368 U.S. 424, 428 (1962))).

Once a court has decided the merits of all of the movant's claims which are properly before it, and has further determined whether the remaining claims may be excused from procedural default based on cause and prejudice, the court may analyze whether based upon a claim of actual innocence under the fundamental miscarriage of justice exception, the movant can avoid procedural default. See Dretke v. Haley, 541 U.S. 386 (2004). The

---

¹(…continued)
based on a defendant's plea of guilty as it does to a court or jury conviction. See Reid v. United States, 976 F.2d 446, 448 (8th Cir. 1992) (applying the rule of procedural default after the defendant's knowing and voluntary plea of guilty).

actual innocence exception to procedural default "applies only when a [movant] shows by clear and convincing evidence that, but for the alleged constitutional error, no reasonable juror would have found the petitioner guilty." Anderson v. United States, 25 F.3d 704, 706–07 (8th Cir. 1994). Furthermore, "[t]he exception only applies to claims of factual innocence as opposed to legal innocence." Id. at 707. Specifically, a movant claiming actual innocence must show: (1) that his allegations of constitutional error are supported by new reliable evidence that was not presented at trial; and (2) that it is more likely than not that no reasonable juror would have convicted him in light of the new evidence. Weeks v. Bowersox, 119 F.3d 1342, 1351 (8th Cir. 1997). The fundamental miscarriage of justice exception is to remain rare and only be applied in the extraordinary case, reserved solely for those who are "truly deserving." Id. at 1351 (citing Schlup v. Delo, 513 U.S. 298, 321–22 (1995)). Accordingly, the actual innocence exception mandates "review of procedurally barred, abusive, or successive claims only in the narrowest type of case—when a fundamental miscarriage of justice would otherwise result." Id. (citing Bowman v. Gammon, 85 F.3d 1339, 1346 (8th Cir. 1996)).

### B. Standard Regarding Ineffective Assistance of Counsel

The Sixth Amendment right to counsel exists "in order to protect the fundamental right to a fair trial." Strickland, 466 U.S. at 684.

> [T]he right to effective assistance of counsel is recognized not for its own sake, but because of the effect it has on the ability of the accused to receive a fair trial. Absent some effect of challenged conduct on the reliability of the trial process, the Sixth Amendment guarantee is generally not implicated.

Lockhart, 506 U.S. at 364 (quoting United States v. Cronic, 466 U.S. 648, 658 (1984)). A criminal defendant is also entitled to effective assistance of counsel on a first appeal. Rogers v. United States, 1 F.3d 697, 700 (8th Cir. 1993); Estes v. United States, 883 F.2d 645, 648 (8th Cir. 1989).

Absent unusual circumstances, a section 2255 movant's demonstration of ineffective assistance of counsel satisfies the cause and prejudice standard of procedural default. Apfel, 97 F.3d at 1076. However, in order to successfully demonstrate ineffective assistance of counsel within the context of section 2255, the movant faces a heavy burden. See id. at 1076. In the context of a motion under section 2255, a claim of ineffective assistance of counsel is to be analyzed under the two-part test set forth in Strickland v. Washington. The United States Supreme Court reformulated the Strickland test for constitutionally ineffective assistance of counsel in Lockhart v. Fretwell. The United States Court of Appeals for the Eighth Circuit's application of this test states:

> Counsel is constitutionally ineffective under Fretwell when: (1) counsel's representation falls below an objective standard of reasonableness; and (2) the errors are so prejudicial that the adversarial balance between defense and prosecution is upset, and the verdict is rendered suspect.

English v. United States, 998 F.2d 609, 613 (8th Cir. 1993) (citing Lockhart, 506 U.S. at 369–70). Review of trial counsel's performance is deferential and the presumption is that trial counsel was competent and effective. Strickland, 466 U.S. at 689; Smith v. Lockhart, 921 F.2d 154, 156 (8th Cir. 1990). Reasonable trial strategy cannot rise to the level of ineffective assistance of counsel. Id. (citing Stacey v. Solem, 801 F.2d 1048, 1051 (8th Cir. 1986)). Counsel's strategic decisions "made after a thorough investigation of law and facts . . . are virtually unchallengeable," Strickland, 466 U.S. at 690, even if those strategic decisions prove unwise. Wing v. Sargent, 940 F.2d 379, 381 (8th Cir. 1988), cert. denied, 489 U.S. 1088 (1989). Representation is an art, and an act or omission that is unprofessional in one case may be sound or even brilliant in another. Strickland, 466 U.S. at 693.

If a section 2255 movant fails to demonstrate ineffective assistance of counsel as cause for the procedural default and prejudice attributable thereto, he or she may not obtain review of the defaulted claim. See Wainright v. Sykes, 433 U.S. 72 (1977). In the

context of ineffective assistance of counsel, "cause" for procedural default must ordinarily be demonstrated by showing that some objective factor external to the defense impeded counsel's efforts to comply with the applicable procedural rule or standard of conduct. See Smith, 882 F.2d at 333 (citing Murray v. Carrier, 477 U.S. 478, 488 (1986)). "When counsel's conduct has impeded the [movant's] effort to bring a claim," such ineffective assistance of counsel constitutes "cause" for purposes of avoiding procedural default. See id.

In addition to establishing "cause," a section 2255 movant must "shoulder the burden of showing, not merely that errors at his trial created a possibility of prejudice but that they worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." United States v. Frady, 456 U.S. 152, 170 (1982). Where conduct has not prejudiced the movant, the court need not address the reasonableness of that conduct. Id. at 691; United States v. Williams, 994 F.2d 1287, 1291 (8th Cir. 1993). To determine whether there is prejudice, the court examines whether the result has been rendered "unreliable or fundamentally unfair" as a result of counsel's performance. Lockhart, 506 U.S. at 364; West v. United States, 994 F.2d 510, 513 (8th Cir. 1993). Unreliability or unfairness does not result if the ineffectiveness of counsel does not deprive the defendant of any substantive or procedural right to which the law entitles him. Lockhart, 506 U.S. at 372, quoted in West, 994 F.2d at 513. Prejudice does not exist unless "there is a reasonable probability that, but for counsel's . . . errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694, quoted in Williams, 994 F.2d at 1291.

### C. Mr. Ahlers's Claims for Relief Pursuant to 28 U.S.C. § 2255

#### 1. Ineffective Assistance of Counsel and Sixth Amendment Right to Counsel on Appeal

Mr. Ahlers claims that the assistance of his counsel, Mr. Robert J. Murphy, was ineffective because Mr. Murphy was under investigation for professional misconduct at the

time of Mr. Ahlers's trial and was suspended from practicing law in Iowa when Mr. Ahlers's appeal was scheduled for oral argument before the United States Court of Appeals for the Eighth Circuit. Mr. Ahlers also claims that his rights under the Sixth Amendment to the United States Constitution were violated as a result. Mr. Ahlers's failure to show he suffered any prejudice as a result of Mr. Murphy's actions renders this claim unsuccessful.

At the time of Mr. Ahlers trial, Mr. Murphy was under investigation for professional misconduct by the Iowa State Bar Association for indiscretion relating to a matter involving a different client prior to Mr. Murphy's representation of Mr. Ahlers. As a result of the investigation, the Iowa Supreme Court suspended Mr. Murphy's license to practice law in the State of Iowa for 60 days. Mr. Ahlers's appeal was scheduled for oral argument before the Eighth Circuit during this time. Mr. Ahlers does not claim, nor does any evidence before this court suggest, that the conduct for which Mr. Murphy was under investigation involved his representation of Mr. Ahlers. Mr. Ahlers only claims that Mr. Murphy's suspension left him without counsel during his appeal and that the investigation "created an actual conflict of interest that adversely affected [Mr. Murphy's] performance during pre-trial, trial, sentencing, and appeal processes." Mr. Ahlers has failed to provide any evidence that Mr. Murphy's representation fell below an objective standard of reasonableness during this time.

Prior to the scheduled oral argument date for Mr. Ahlers's appeal, the Eighth Circuit determined that the case could be decided on the briefs without oral argument. Rule 34A of the Eighth Circuit's Rules and Procedures allows the court to "reclassify [a] case as suitable for disposition without oral argument." Thus, the Eighth Circuit's decision to decide Mr. Ahlers's appeal without oral argument was well within the court's discretion and did not result in any prejudice to Mr. Ahlers's appeal. Mr. Ahlers was not denied effective assistance of counsel during his appeal. His Sixth Amendment rights to counsel were not violated.

Mr. Ahlers's other claims concerning Mr. Murphy's assistance of counsel during trial fail to show he suffered any prejudice. Mr. Ahlers has failed to allege any specific acts or instances where he felt Mr. Murphy's assistance of counsel fell below an objective standard of reasonableness. Such conclusory allegations are insufficient to warrant relief under section 2255. United States v. Smith, 843 F.2d 1148, 1149 (8th Cir. 1988). Because Mr. Ahlers has failed to show that Mr. Murphy's representation fell below an objective standard of reasonableness or that he suffered any prejudice as a result of the investigation and suspension of Mr. Murphy, his ineffective assistance of counsel claim cannot succeed.

## 2. Subject Matter Jurisdiction

Mr. Ahlers claims that the District Court for the Northern District of Iowa did not have subject matter jurisdiction to "try, convict, and sentence" him because the court did not have subject matter jurisdiction over Mr. Frank's 1988 arson case. The government states that: (1) Mr. Ahlers is procedurally barred from challenging the subject matter jurisdiction of the district court because he did not raise the issue during his direct appeal to the United States Court of Appeals for the Eighth Circuit; (2) even if Mr. Ahlers had raised the issue during his direct appeal, his failure to challenge subject matter jurisdiction during trial constituted a failure to preserve error; (3) he does not have standing to challenge the district court's jurisdiction over Mr. Frank's case; and (4) the district court had subject matter jurisdiction over Mr. Frank's 1988 arson conviction and Mr. Frank's and Mr. Ahlers's convictions that led to this motion. The government's assertions regarding Mr. Ahlers's ability to challenge the subject matter jurisdiction of the district court in this collateral review contravene established law. However, the district court had subject matter jurisdiction over Mr. Ahler's case.

Mr. Ahlers did not lose his ability to challenge the subject matter jurisdiction of the district court by failing to raise the issue during trial or during his direct appeal. Subject

matter jurisdiction "can never be forfeited or waived" because "it involves a court's power to hear a case." United States v. Cotton, 535 U.S. 625, 630 (2002). "Consequently, defects in subject-matter jurisdiction require correction regardless of whether the error was raised in district court." Id. Thus, this court is free to determine whether the district court possessed subject matter jurisdiction over Mr. Ahlers's case.

Title 18 U.S.C. § 3231 states that "[t]he district courts of the United States shall have original jurisdiction, exclusive of the courts of the States, of all offenses against the laws of the United States." Mr. Ahlers was convicted of crimes outlined in 18 U.S.C. §§ 2, 371, 1341, 1343, 1503, 1956(a)(1)(B)(I), 1956(h), and 1957. These charges were set forth in an indictment returned October 30, 2000, in the Northern District of Iowa, and are within the purview of section 3231. Mr. Ahlers has failed to provide any authority in support of his contention that the district court lacked subject matter jurisdiction or that the federal crimes for which he was convicted were not within the jurisdiction of the district court.

### 3. Ex Post Facto Clause Violation

Mr. Ahlers claims that the sentence he received is inconsistent with the jury's verdict and the U.S. Sentencing Guidelines. Mr. Ahlers was sentenced in accordance with the 2000 Sentencing Guidelines, which provided for a base offense level of 20 under section 2S1.1. Frank, 354 F.3d at 927. Mr. Ahlers asserts that the 2002 Sentencing Guidelines should have determined his sentence, which, he asserts, would have resulted in a lower base offense level.

This issue was raised on Mr. Ahlers's direct appeal to the United States Court of Appeals for the Eighth Circuit and denied. Id. at 928. The Eighth Circuit is clear that "claims which were raised and decided on direct appeal cannot be re-litigated on a motion to vacate pursuant to 28 U.S.C. § 2255." United States v. Shabazz, 657 F.2d 189, 190 (8th Cir. 1981). This is true even if "the issues were raised on direct appeal in a pro se brief," such as in the instant case. Id. Furthermore, in its denial of Mr. Ahlers's

argument, the Eighth Circuit noted that Mr. Ahlers would have received a base offense level of 24 had the 2002 Sentencing Guidelines determined his sentence, "which is at least three levels higher than that which [he] received under the 2000 guidelines." Frank, 354 F.3d at 928. The Eighth Circuit's denial of the issue was based on its determination that the "district court properly used the sentencing guidelines in effect at the time the offenses of conviction were committed so as to avoid a violation of the ex post facto clause." Id. Mr. Ahlers's argument is barred pursuant to Eighth Circuit precedent. The motion to reconsider sentencing (docket number 307) must be denied.

### 4. Constitutionality of Sentence

Mr. Ahlers also alleges that his sentence is unconstitutional because he was sentenced for conduct not alleged in the indictment or provided in the jury's verdict. In its resistance, the government addresses this argument as an unsophisticated Blakely v. Washington/United States v. Booker claim. This court agrees with the government that Mr. Ahlers is actually making a Blakely/Booker claim, despite his assertions of constitutional violations.

Mr. Ahlers's argument is premised on the fact that his sentence was enhanced post-trial under section 3D1.1 of the U.S. Sentencing Guidelines. By enhancing his sentence under the Sentencing Guidelines, Mr. Ahlers insists that the district court found him guilty of these "new" charges without the benefit of a constitutionally-guaranteed jury trial. As this court understands it, Mr. Ahlers's claim is that he was entitled to have a jury decide all facets of his trial and sentencing. Blakely and Booker directly address sentencing issues under the constitutional provisions cited by Mr. Ahlers.

In Blakely, the United States Supreme Court held that any departure, either upward or downward, beyond that authorized by statute, requires submission of the issue to a jury unless the underlying facts creating the departure are admitted by the defendant. 124 S. Ct. at 2543. In Booker, the Supreme Court held that the Blakely principle applied to departures from the U.S. Sentencing Guidelines. 124 S. Ct. at 755–56. In doing so,

12

the Court also held that the Sentencing Guidelines are not mandatory, but are merely advisory. Id. at 757. Thus, the Court's holding "requires a sentencing court to consider Guidelines ranges . . . [,] but it permits the court to tailor the sentence in light of other statutory concerns . . . ." Id. (citations omitted). However, the Court held that its Booker holding only applied retroactively to "all cases on direct review." Id. at 769. The Court made no mention of cases on collateral review.

The United States Supreme Court's decision in Blakely was an extension of the principle it set forth in Apprendi v. New Jersey, 530 U.S. 466 (2000). In Apprendi, the Court held that, "'other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt.'" Id. at 490, quoted in Schriro v. Summerlin, 124 S. Ct. 2519, 2522 (2004). New procedural rules announced by the Court apply retroactively "to all criminal cases still pending on direct review." Schriro, 124 S. Ct. at 2522. However, new procedural rules only apply in limited circumstances to convictions that are already final. Id. The Court set forth a three-step analysis regarding the application of new procedural rules to cases on collateral review in Teague v. Lane, 489 U.S. 288 (1989), which the Court recently reaffirmed in Beard v. Banks, 124 S. Ct. 2504 (2004). The analysis involves determining: (1) "when the defendant's conviction became final"; (2) "whether the rule is actually 'new'"; and (3) "whether [the rule] falls within either of the two exceptions to nonretroactivity." Id. at 2510. The two exceptions to this rule involve substantive rules and constitutional determinations. Schriro, 124 S. Ct. at 2522. The latter exception involves "'watershed' procedural rule[s] entitled to retroactive effect." Id. at 2523. As the Court stated in Schriro v. Summerlin, "[s]uch rules apply retroactively because they 'necessarily carry a significant risk that a defendant stands convicted of an act that the law does not make criminal' or faces a punishment that the law cannot impose upon him." Id. at 2522–23 (quoting Bousley v. United States, 523 U.S. 614, 620–21 (1998)).

Although the United States Supreme Court has not explicitly addressed whether Booker satisfies the Teague Test and is retroactively applicable to cases on collateral review, all of the circuit courts that have addressed this issue have held that it is not to be retroactively applied. The United States Court of Appeals for the Sixth Circuit has noted that "[t]he Supreme Court has never held that a new rule of criminal procedure falls within Teague's second exception," and thus the rule announced in Booker was not a watershed procedural rule worthy of retroactive application to cases on collateral review. Humphress v. United States, 398 F.3d 855, 863 (6th Cir. 2005) (citing Beard, 124 S. Ct. 2513–14). The Seventh Circuit has also held that Booker does not represent a "watershed" procedural rule and "does not apply retroactively to criminal cases that became final before its release on January 12, 2005." McReynolds v. United States, 397 F.3d 479, 481 (7th Cir. 2005). The Tenth Circuit has undertaken the same Teague analysis and reached the same conclusion. United States v. Bellamy, No. 04-5145, 2005 WL 1406176, at *3 (10th Cir. June 16, 2005). The Second, Fifth, and Eleventh Circuits have held that because the Supreme Court did not explicitly state that Booker was applicable to cases on collateral review, it does not apply retroactively to collateral cases. Green v. United States, 397 F.3d 101, 103 (2d Cir. 2005); In re Elwood, 408 F.3d 211, 213 (5th Cir. 2005); In re Anderson, 396 F.3d 1336, 1339 (11th Cir. 2005). The First and Third Circuits have adhered to the above outlined reasoning and relied on the fact that every circuit court that has addressed whether Booker is retroactively applicable to cases on collateral review has determined that it is not. Cirilo-Munoz v. United States, 404 F.3d 527, 533 (1st Cir. 2005); Lloyd v. United States, 407 F.3d 608, 614 (3d Cir. 2005). Finally, the Eighth Circuit, following the same reasoning promulgated by its sister circuits, has held that "the 'new rule' announced in Booker does not apply to criminal convictions that became final before the rule was announced, and thus does not benefit movants in collateral proceedings," such as Mr. Ahlers. Never Misses a Shot v. United States, No. 05-1233, 2005 WL 1569403, at *2 (8th Cir. July 7, 2005).

In accordance with the above reasoning regarding the lack of retroactive applicability of Booker to cases on collateral review, Mr. Ahlers is not entitled to any relief under Booker. Thus, Mr. Ahlers's assertions of violations of his constitutional rights by the government lack merit.

For the reasons discussed above, **IT IS RECOMMENDED**, unless any party files objections to this Report and Recommendation within ten (10) days of the date of this Report and Recommendation, that the movant's motion for relief under 28 U.S.C. § 2255 and his motion to reconsider sentencing be denied.[2]

September 2, 2005.

JOHN A. JARVEY
Magistrate Judge
UNITED STATES DISTRICT COURT

---

[2] Any party who objects to this Report and Recommendation must serve and file specific, written objections within ten (10) court days from this date. A party objecting to the Report and Recommendation must arrange promptly for a transcription of all portions of the record that the district court judge will need to rule on the objections.

15